Hinkle, J.
Plaintiffs Don Chin, James Wong and Stanley Kwong, all members of defendant Chinese Merchants Association of Massachusetts (Massachusetts Association), bring a derivative suit seeking to cancel or rescind two conveyances of property owned by the Massachusetts Association which defendant Paul Chin allegedly made without authority and without obtaining adequate consideration for the Massachusetts Association. As a result of negotiations involving the United States On Leong Chinese Merchants Association (National Association), the parties reached a settlement wherein the defendant purchasers of the two properties agreed to pay additional consideration. Defendants now seek the court’s approval of this settlement.
Prospective intervenors Sam Ng, Cheng Kwok, Sek Cho Wong and Hin Kwan Kwong, all members of the Massachusetts Association, allege that plaintiffs agreed to the settlement only as a result of threats and coercion. They oppose approval of the settlement and now move to intervene as party plaintiffs. After hearing[3] and for the reasons stated below, defendants’ motion to approve settlement is DENIED, and the prospective intervenors’ motion to intervene is ALLOWED.
BACKGROUND
The following summarizes the facts presented in the memoranda submitted by the parties and the prospective intervenors, and should not be misunderstood as findings of the court.
Defendant Massachusetts Association, a nonprofit entity incorporated under Massachusetts law in 1903, is a local chapter of the National Association. As President of the Massachusetts Association, defendant Chin in 1991 conveyed two Boston properties owned by the Massachusetts Association. Chin sold the property at 57-59 Beach Street/2 Tyler Street to defendants Cheng Kwan Wong, Ay-Chi Wong, Cheng Yah Wong and Betty Pei Dei Wong, and the property at 65-65A Beach Street to defendant Mee Ha Wong Lau, as trustee of 65 Beach Street Nominee Trust. Cheng Kwan Wong is the son of Way Ping Wong, who at the time of the conveyance was an official in the National Association. Mee Ha Wong Lau is Chin’s sister. Questions exist as to whether Chin had the necessary approval to make these transfers, whether Chin conveyed the properties at less than fair market value, and whether the Massachusetts Association ever received the purported consideration of $250,000 for each property.
At the National Association’s convention held in Boston in 1996, delegates discussed the disputed transactions. They unanimously voted to approve the proposed settlement, the terms of which provided for the payment to the National Association of an additional $50,000 by the purchasers of each property. Only one delegate at the national convention represented the Massachusetts Association. After the dispute was resolved to the satisfaction of the National Association, plaintiffs allegedly were pressured to accept the settlement. According to plaintiffs, they "were told that if they refused to sign the settlement agreement and instruct their counsel to dismiss this case[,] they would be expelled from the Chinese Merchants Association.”[4]
DISCUSSION
I. Motion to Approve Settlement
The proposed settlement constitutes a compromise of plaintiffs’ derivative suit. Under Mass.R.Civ.P. 23.1, court approval is a prerequisite to the dismissal or compromise of a derivative action. No appellate court in Massachusetts appears to have established the standard for court approval under Rule 23.1. Federal cases interpreting the analogous federal rule, and state cases interpreting Rule 23 which governs class actions, require that the proponents of a settlement establish that it is fair and reasonable and in the best interests of those whom it will affect. See Greenspun v. Bogan, 492 F.2d 375, 378 (1st Cir. 1974) (court must safeguard interests of shareholders not directly involved in suit); Sniffin v. Prudential Ins. Co. of America, 395 Mass. 415, 421, 426 (1985); James W. Smith & Hiller B. Zobel, Rules Practice §23.1.9, at 137 (1975). These cases caution against the “rubber-stamping” of a proposed settlement and instead require that the court “exercise judgment sufficiently independent and objective to safeguard the interests of shareholders not directly involved in the action.” See Greenspun v. Bogan, 492 F.2d 375, 378-79 (1st Cir. 1974); Smith & Zobel, supra.
Several factors undermine defendants’ assertion that the proposed settlement is fair and reasonable and in the best interests of those it will affect. Plaintiffs and the prospective intervenors have raised serious challenges to the underlying transactions, including *116 Chin’s authority to convey the properties and Chin’s relationship with the buyers. Defendants have been unable to produce records clearly documenting the amount of consideration received for each transaction. Defendants also have not established why the additional consideration provided for under the settlement was only in the amount of $100,000 and was not even paid to the Massachusetts Association. See Sniffin v. Prudential Ins. Co. of America, 395 Mass. at 421 (most important factor in assessing fairness of settlement is strength of plaintiffs case on merits balanced against amount offered in settlement). Finally, the allegation that plaintiffs were coerced into accepting the National Association’s resolution of the dispute precludes my approval of the settlement.
II. Motion to Intervene
Mass.R.Civ.P, 24 provides for intervention as a matter of right for applicants claiming “an interest relating to the property or transaction which is the subject of the action [if they are] so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest, unless [their] interest is adequately represented by existing parties.” This standard is similar to that governing derivative actions, which “may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.” See Mass.R.Civ.P. 23.1. Applicants who seek to intervene must make a compelling showing of the inadequacy of the representation by existing parties. See Planned Parenthood League of Massachusetts, Inc. v. Attorney General, 424 Mass. 586, 599 (1997); Attorney General v. Brockton Agric. Soc’y, 390 Mass. 431, 434 (1983).
The prospective intervenors, as members of the Massachusetts Association, clearly have an interest in the transaction which is the subject of the underlying claim. They assert that intervention is necessary because the pressure exerted on plaintiffs to accept the settlement rendered them incapable of fairly and adequately representing the interests of the other members of the Massachusetts Association. In their memorandum regarding intervention, plaintiffs verify the allegations of threats and coercion. They “recognize that the proposed settlement meets none of their goals in this case and results in no benefit whatsoever to the Chinese Merchants Association of Massachusetts.”
Based on the alleged pressure placed on plaintiffs to settle, I find and rule that the prospective interve-nors have made a compelling showing of inadequate representation and therefore intervention under Rule 24 is proper.
ORDER
For the foregoing reasons, defendant’s motion to approve settlement is DENIED, and the prospective intervenors’ motion to intervene is ALLOWED.

 Oral arguments on the motion to approve settlement were heard in November of 1998. In accordance with an agreement by the parties, I have decided the motion to intervene on the papers.

 See Plaintiffs Memorandum Regarding Intervention at 1 (not specifying whether expulsion would be from the National Association, the Massachusetts Association or both). The extent to which the National Association has authority and control over the Massachusetts Association is unclear. Defendants argue that the National Association has authority to resolve any disputes involving it, its local chapters or its branches, and to control the assets of local chapters and branches. The prospective intervenors dispute these claims and assert that the Massachusetts Association enjoys a certain degree of autonomy from the National Association — as demonstrated by their independent elections and governance.