447 Mass. 513 (2006)                                513

Cooper *v.* Regional Administrative Judge of the District Court for Region V.

ROSEMARY J. COOPER *vs.* REGIONAL ADMINISTRATIVE JUDGE OF THE DISTRICT COURT FOR REGION V & another.[1]

Suffolk. September 6, 2006. - October 10, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, COWIN, & CORDY, JJ.

*Supreme Judicial Court,* Appeal from order of single justice. *Attorney at Law,* Compensation.

This court concluded that a single justice inappropriately granted relief under G. L. c. 211, § 3, to an attorney and former bar advocate challenging orders of assignment to represent indigent criminal defendants during the shortage of defense counsel considered in *Lavallee* v. *Justices in the Hampden Superior Court,* 442 Mass. 228 (2004), and the rate of compensation for such assignments, where the attorney failed to demonstrate sufficiently the absence of adequate alternative remedies. [520-522]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 10, 2004.

The case was heard by *Spina,* J.

*Ronald F. Kehoe,* Assistant Attorney General, for the defendants.

*John M. Thompson (Linda J. Thompson* with him) for the plaintiff.

GREANEY, J. This case involves cross appeals from a memorandum and judgment of a single justice of this court allowing the petition of Rosemary J. Cooper seeking relief pursuant to G. L. c. 211, § 3. The petitioner is an attorney and a former bar advocate. The appeals pertain to her assignments to represent indigent criminal defendants during the unusual temporary shortage of defense counsel that was first considered in *Lavallee* v. *Justices in the Hampden Superior Court,* 442 Mass. 228 (2004) *(Lavallee).* We conclude that relief under G. L. c. 211, § 3, was inappropriate.

The background of the case is as follows. On July 28, 2004,

---

[1] The Springfield Division of the District Court Department.

we decided the *Lavallee* case, which addressed the lack of legal representation for indigent criminal defendants through the assigned counsel system administered by the Committee for Public Counsel Services (CPCS).[2] *Id.* at 229-230. The problem arose because of a shortage of lawyers in the Hampden County bar advocates program resulting from the low rate of attorney compensation then authorized by the CPCS budget appropriation. *Id.* We concluded that the petitioners, indigent criminal defendants without assigned counsel seeking relief pursuant to G. L. c. 211, § 3, were being deprived of their right to counsel under art. 12 of the Massachusetts Declaration of Rights. *Id.* at 230, 232.

In *Lavallee* we noted that a "systemic problem of constitutional dimension" had developed, and we examined possible remedies to ameliorate the situation. *Id.* at 244, 246-249. We rejected, among other proposals, the petitioners' request to "order judges to authorize compensation rates in excess of what the Legislature has appropriated." *Id.* at 241. However, we established deadlines for the appointment of counsel and remedies if those deadlines were not satisfied. *Id.* at 246. More particularly, we concluded:

> "[N]o defendant entitled to court-appointed counsel may be required to wait more than forty-five days for counsel to file an appearance . . . . Proceedings in which a defendant cannot participate meaningfully may not be allowed to proceed. If, despite good faith efforts by CPCS, no attorney has filed an appearance on behalf of an indigent defendant within forty-five days of arraignment, the criminal case against such defendant must be dismissed

---

[2] In 1983, the Legislature enacted G. L. c. 211D, which replaced the Massachusetts Defenders Committee with the Committee for Public Counsel Services (CPCS) to provide indigent representation in criminal and certain noncriminal matters. See St. 1983, c. 673. See also Rosenfeld, The Right to Counsel and Provision of Counsel for Indigents in Massachusetts: The Hennessey Era, 74 Mass. L. Rev. 148, 149-151 (1989) (providing historical background to assigned counsel system for indigent defendants). As explained in *Lavallee* v. *Justices in the Hampden Superior Court,* 442 Mass. 228, 232 (2004) (*Lavallee*), "Hampden County Bar Advocates, Inc. [HCBA], contracts with CPCS to provide counsel for indigent defendants in Hampden County in cases that CPCS staff attorneys are unable to accept. See G. L. c. 211D, § 6 (*b*)."

447 Mass. 513 (2006)                                                     515

Cooper *v.* Regional Administrative Judge of the District Court for Region V.

without prejudice. . . . Similarly, an indigent defendant who is held in lieu of bail or under an order of preventive detention may not be held for more than seven days without counsel." (Citation and footnote omitted.)

*Id.*

We then outlined a preliminary system to implement our remedy, subject to modifications by the single justice after consultation with those affected by the system. *Id.* at 247. We directed as follows:

> "The clerk-magistrate of each District Court in Hampden County, and the clerk-magistrate of the Hampden Superior Court shall, on a weekly basis, prepare a list of all unrepresented criminal defendants facing charges in their respective courts and shall forward that list to the Superior Court RAJ [Regional Administrative Justice], the District Court RAJ, the district attorney, the Attorney General, and chief counsel for CPCS. . . . On receipt of that list each week, the Superior Court RAJ shall schedule a prompt status hearing with respect to each defendant who has been held for more than seven days, or each defendant whose case has been pending for more than forty-five days."

*Id.* at 247-248. We went on to explain:

> "If the Superior Court RAJ determines [as of the time of the status hearing] that, despite good faith efforts of CPCS and any efforts by others to secure representation for any such defendant, there is still no counsel willing and available to represent a defendant, then the Superior Court RAJ must order the following: (1) with respect to any defendant who has been held in lieu of bail or pursuant to an order of preventive detention for more than seven days, the Superior Court RAJ shall order that the defendant be released on personal recognizance and may, in view of the emergency nature of this remedy, treat this as an exception to *Commonwealth* v. *Dodge,* 428 Mass. 860, 864-866 (1999), and impose probationary conditions pursuant to G. L. c. 276, § 87, without the defendant's consent; (2) with respect to any defendant who has been facing a felony charge for more than forty-five days without counsel, or a

> misdemeanor or municipal ordinance violation charge for more than forty-five days without counsel on which a judge has not declared, pursuant to G. L. c. 211D, § 2A, an intention to impose no sentence of incarceration, the Superior Court RAJ shall order that the charge or charges be dismissed without prejudice until such time as counsel is made available to provide representation to that defendant."

*Id.* at 248-249.

In a footnote, we identified two methods for expanding the pool of available attorneys, one through CPCS and one through the courts. The first method was to be implemented by CPCS outside the Hampden County bar advocate program:

> "We expect that CPCS, pursuant to its authority under G. L. c. 211D, § 6 (*b*), will take all reasonable measures to expand the list of attorneys available to accept assignments in criminal cases in Hampden County, who are not members of Hampden County Bar Advocates, Inc. [HCBA]."

*Id.* at 248 n.18.

The second method was to be implemented by court officials under the supervision of the single justice:

> "[T]he Superior Court RAJ, with the assistance of the Regional Administrative Justice of the District Court for region 5, may pursue all reasonable means to develop his own list of qualified and available attorneys from which he may make assignments, consistent with S.J.C. Rule 1:07, as amended, 431 Mass. 1301 (2000),[3] whenever CPCS certifies that it has no available attorney. Such attorneys shall be entitled to compensation from CPCS appropriated funds at the rates approved by the Legislature."

*Id.*

Following the *Lavallee* decision, the single justice entered a

---

[3]Supreme Judicial Court Rule 1:07, as amended, 431 Mass. 1301 (2000), pertains to the process of making fee-generating appointments, requiring, among other things, "each court to create lists of qualified candidates and then generally make appointments from those lists in rotation or sequential order."

447 Mass. 513 (2006)          517

Cooper v. Regional Administrative Judge of the District Court for Region V.

two-page "interim order" on August 17, 2004, authorizing judges in the arraignment sessions of the Superior and District Courts of Hampden County to assign counsel in cases where CPCS and HCBA were unable to provide counsel who would accept assignments. The assignments were to be made in two ways. First, assignments could be made from lists, created in cooperation with the RAJ of the Superior Court for the western region, of lawyers who were willing to accept assignments and who were determined to be competent to handle cases assigned to them. Such assignments expressly were not to be made under the existing contract between CPCS and HCBA, and payment to such assigned counsel would be "at the hourly rates approved by the Legislature." Further, the lists were to be "managed pursuant to S.J.C. Rule 1:07." Under the second method, judges could assign cases pursuant to Mass. R. Prof. C. 6.2, 426 Mass. 1415 (1998),[4] to lawyers who executed contracts with HCBA. Those attorneys could be assigned "day duty" pending an inquiry into the status of the contract between CPCS and HCBA, and the contracts between the individual attorneys and HCBA. The single justice stated that he would "be available on short notice to review assignment orders that attorneys wish to challenge."

The interim order was anticipated in a letter from the RAJ of the District Court Department for Region V (Region V RAJ), to the president of HCBA. In the letter, the Region V RAJ informed HCBA that he soon would be assigning dates and

---

[4]Rule 6.2 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1415 (1998), provides:

"A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:

"(a) representing the client is likely to result in violation of the Rules of Professional Conduct or other law; or

"(b) representing the client is likely to result in an unreasonable financial burden on the lawyer; or

"(c) the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client."

518                                          447 Mass. 513 (2006)

Cooper *v.* Regional Administrative Judge of the District Court for Region V.

cases, as needed, in the five District Courts of Hampden County. The cases would be assigned to attorneys on the August, 2004, list of Hampden County bar advocates. The use of the list was "not premised on whether the attorney is presently in the program but that qualifications have been met with CPCS." The Region V RAJ stated that the assignments would be made pursuant to Mass. R. Prof. C. 6.2.

The petitioner here is an attorney and practices in Hampden County. She had served as a bar advocate since 1989, pursuant to annual contracts executed with HCBA through 2003. Although the petitioner had not signed a bar advocate contract for 2004, her name appeared on the August, 2004, HCBA list of bar advocates because she had been accepting assignments in 2004 prior to the interim order. Commencing with an order dated August 13, 2004, the petitioner received approximately nine "orders of assignment" from the Region V RAJ, directing her to appear at the Springfield Division of the District Court Department for "day duty" on various days, at which time she was "to accept cases in need of assignment." The orders of assignment stated that her appointment was not made in her capacity as a bar advocate, but rather in accordance with CPCS's approval of her qualifications. The orders specified that she would bill her fees at the legislatively authorized rate of thirty-seven dollars and fifty cents per hour,[5] and provided that "[a]ny assertions of good cause under [r]ule 6.2 will be made by affidavit" to the Region V RAJ by facsimile transmission.

To each order of assignment, the petitioner filed an "Objection to Order of Assignment and Motion to be Paid $60 Per Hour" (objection).[6] In the objection, the petitioner stated that her "primary objection" is that Mass. R. Prof. C. 6.2 "is being improperly used as a hammer to threaten, coerce and intimidate her and other attorneys who have been certified . . . by [CPCS] to accept appointments without her consent and that she is being subjected to unequal treatment because other qualified at-

---

[5]The legislatively authorized rate for District Court cases is currently fifty dollars per hour. G. L. c. 211D, § 11, as amended by St. 2005, c. 54, § 2.

[6]The rate of sixty dollars per hour was the rate that the petitioner asserted CPCS had established in 2005 pursuant to G. L. c. 211D, § 11, which authorizes CPCS to establish rates of compensation to appointed or assigned counsel "subject to appropriation."

torneys not so certified are not also ordered to appear and accept appointments." She asserted that "this conscription of her services by [o]rder of the [c]ourt represents involuntary servitude and a violation of the Thirteenth and Fourteen[th] Amendments and [art. 12] of the Massachusetts Declaration of Rights [and] is a taking of her property. . . ." Last, the petitioner stated that, while she did not object on the basis of any "good cause" exception to rule 6.2, "the [thirty-seven dollars and fifty cents per hour] rate of compensation . . . is inadequate to cover her expenses and provide a modest income for her services." She requested that the court order payment to her of sixty dollars per hour in recognition that "exceptional circumstances . . . necessitate the use of a different procedure" under S.J.C. Rule 3:10 (5), as appearing in 416 Mass. 1306 (1993).[7] In support of this filing, the petitioner also filed an affidavit and a memorandum of law. The petitioner's objections were denied by the Region V RAJ.

The petitioner next sought review by filing a petition under G. L. c. 211, § 3, in the county court. Her petition seeks various declarations and orders, particularly a declaration that orders of assignment cannot be used to assign counsel to indigent defendants, and a declaration that trial court judges have authority to order increased compensation to attorneys under S.J.C. Rule 3:10 (5). The single justice denied relief on the ground that the petitioner had signed a 2004 bar advocate contract containing a provision imposing the legislatively authorized rate of compensation, thus barring her from claiming entitlement to compensation at a rate higher than thirty-seven dollars and fifty cents per hour. The petitioner moved for reconsideration, pointing out to the single justice that she had not signed a 2004 bar advocate contract. Acknowledging an oversight, the single justice allowed the petitioner's motion for reconsideration and vacated his previous order denying relief. The single justice

---

[7]S.J.C. Rule 3:10 (5), as appearing in 416 Mass. 1306 (1993), concerns the assignment of counsel to persons found to be indigent. The rule provides, in pertinent part: "If . . . the judge finds that a party is [indigent or indigent but able to contribute], the judge shall assign the [CPCS] to provide representation for the party, unless exceptional circumstances, supported by written findings, necessitate use of a different procedure that is consistent with G. L. c. 211D and the rules of this court."

520                                  447 Mass. 513 (2006)

Cooper *v.* Regional Administrative Judge of the District Court for Region V.

went on to conclude that (1) the petitioner's appointment pursuant to rule 6.2 was warranted because exceptional circumstances had necessitated appointments under a different procedure "outside the framework of G. L. c. 211D," and (2) the petitioner was not limited to the legislatively authorized hourly rate because she had not served voluntarily, and was "entitled to a hearing in the trial court to determine the fair rate of compensation to which she is entitled." The single justice allowed the petition and remanded the case for a hearing on fair compensation. The parties filed cross appeals.

1. We first take up the petitioner's claims that are inherently contradictory — she challenges the orders of appointment, but she is willing to provide services pursuant to those orders if she can be compensated at an hourly rate higher than the legislatively authorized rate.

The petitioner argues that the orders of appointment "were not warranted by 'exceptional circumstances' within the meaning of S.J.C. Rule 3:10 (5); that the unavailability of volunteer private attorneys in Hampden County willing to work at statutory rates does not constitute the type of 'exceptional circumstance' referred to in rule 3:10 (5); that the [RAJ's] alternative system is not consistent with G. L. c. 211D and the implementing rules of this [c]ourt; and that it conflicts with *Lavallee*." The petitioner failed to raise these issues in her objection and supporting memorandum of law. The issues are deemed waived. *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976). In addition, the petitioner's equal protection claim is waived because it was not adequately raised below. See *Rattigan* v. *Wile*, 445 Mass. 850, 863 (2006); *Sugarman* v. *Board of Registration in Med.*, 422 Mass. 338, 347 (1996). Her entire equal protection claim consists of a conclusory statement that the orders violated her constitutional rights under certain State and Federal constitutional provisions. See *Rattigan* v. *Wile, supra*; *Sugarman* v. *Board of Registration in Med., supra*.

The petitioner's challenges to the orders of assignment on the above-noted grounds or other grounds (such as the fact that the court had no authority, inherent or otherwise, to make *involuntary* appointments of counsel, or that the rate of compensation

was inadequate and imposed an unjust financial sacrifice) fail because the petitioner could have relied on these grounds to satisfy the "good cause" exception to rule 6.2, thus obviating the need for seeking relief pursuant to G. L. c. 211, § 3. Rule 6.2 states, as a general matter, that "[a] lawyer shall not seek to avoid appointment by a tribunal to represent a person," but expressly provides exceptions for "good cause," and sets forth three nonexclusive examples of good cause, including that an assignment may impose an unreasonable financial burden on a lawyer or otherwise violate the law. See note 4, *supra.* Based on her stated objection and supporting affidavit and memorandum of law, the petitioner could have moved to be excused from the orders of assignment on the grounds that she did not have a current bar advocate contract with HCBA and was not willing to serve, and the rate of compensation would cause her undue financial burden. Had an order entered excepting her from service based on, for example, undue financial burden, the petitioner would have had no reason to challenge the adequacy of the rate of compensation or, for that matter, to raise the quixotic claim of "involuntary servitude." She purposefully chose not to object to the orders of assignment "on the basis of any 'good cause' exception to [r]ule 6.2." We reject the petitioner's contention that no alternative remedy existed under rule 6.2 because that rule authorizes relief only from appointment and not "relief from conscription." Based on the petitioner's grounds for her objection, an order could have entered granting her relief from the assignments.

The demonstration of the absence of adequate alternative remedies is a threshold requirement that a petitioner must satisfy before we will proceed to address the merits of a petition under G. L. c. 211, § 3. General Laws c. 211, § 3, is specific on the point by conferring on this court the power of "general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein *if no other remedy is expressly provided*" (emphasis added). See *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue,* 406 Mass. 701, 706 (1990). See also *McGuinness* v. *Commonwealth,* 420 Mass. 495, 497 (1995); *Commonwealth* v. *Yelle,* 390 Mass. 678, 687 (1984), and cases cited. The petitioner's failure to demonstrate suf-

ficiently the absence of adequate alternative remedies, when such remedies were available, are fatal to her claim for relief under G. L. c. 211, § 3. See *Hunt* v. *McKendry*, 434 Mass. 1025, 1026 (2001), and cases cited.

2. The single justice's memorandum and judgment after reconsideration must be vacated, including his directive that the matter be remanded for a hearing on fair compensation. As a consequence, we need not address the respondents' claim in their cross appeal that the single justice's action of remanding the matter to determine fair compensation violates the separation of powers doctrine and the remedial limitation imposed by the *Lavallee* decision. *Lavallee, supra* at 248 n.18. We also need not address the petitioner's claim (and the single justice's suggestion) that the lack of fair compensation for lawyers in the petitioner's circumstances may amount to a constitutional taking.

3. The memorandum and judgment after reconsideration entered January 14, 2005, in the county court is vacated. A new judgment shall enter in the county court allowing the petitioner's motion to reconsider and vacating the judgment of January 3, 2005, for the reasons set forth by the single justice in his memorandum and judgment after reconsideration; and denying the petitioner's petition under G. L. c. 211, § 3.

*So ordered.*